# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NELLIE M. GUYTON, *Administratrix* of the Estate of CHESTER L. GUYTON, *Deceased*, <br><br> Plaintiff, <br><br> v. <br><br> LT. GREGORY M. BACHER, SGT. ROBERT JOHNSON, JOHN DOE NO. 1, and JOHN DOE NO. 2, <br><br> Defendants. | CIVIL ACTION NO. 3:12-27 <br><br> JUDGE KIM R. GIBSON |

## MEMORANDUM OPINION

### I. Introduction

Pending before the Court is a motion for summary judgment (ECF No. 28) filed by Defendants Lt. Gregory M. Bacher and Sgt. Robert Johnson. For the reasons stated below, the Court will **GRANT** Defendants' motion for summary judgment.

### II. Jurisdiction and Venue

The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) and (4). Venue is proper under 28 U.S.C. § 1441(a).

### III. Background

This tragic case stems from the death of Chester L. Guyton ("Decedent") during a standoff with police. Plaintiff—Decedent's wife and the administratrix of his estate—initiated this action alleging that Defendants violated her husband's rights under the Fourth and Fourteenth Amendments to the United States Constitution.

### A. Procedural Background

Plaintiff filed a two-count complaint in this matter on February 7, 2012, asserting a wrongful death action and a survival action, both pursuant to 42 U.S.C. § 1983. (*See* ECF No. 1, Compl.). The complaint names the following four Defendants: Lt. Gregory M. Bacher, Sgt. Robert Johnson, and John Doe No. 1 and John Doe No. 2, who were both allegedly employees of the Pennsylvania State Police. The complaint alleges that John Doe No. 1 fired the shot killing Decedent. (ECF No. 1, Compl. ¶ 5). However, Plaintiff never amended her complaint to identify the two fictitious John Doe Defendants.

Defendants Bacher and Johnson filed an answer on March 29, 2012. (*See* ECF No. 6). The parties then conducted discovery. While Plaintiff was initially represented by counsel, the Court granted counsel's request to withdraw as attorney for Plaintiff on September 7, 2012. (*See* ECF No. 19). Plaintiff has been unable to retain new counsel and is proceeding in this case *pro se*.[1] (*See* ECF No. 32).

On September 26, 2013, Defendants Bacher and Johnson filed a motion for summary judgment (ECF No. 28), a brief in support (ECF No. 29), a concise statement of material facts (ECF No. 30), and an appendix of supporting exhibits (ECF No. 31). On November 22, 2013, Plaintiff filed a response (ECF No. 34) to Defendants' concise statement of material facts, but otherwise did not respond to Defendants' motion.[2]

---

[1] The Court encouraged Plaintiff to hire new counsel and granted several extensions of time to accommodate Plaintiff's *pro se* status. (*See, e.g.*, ECF Nos. 21, 22). Nevertheless, Plaintiff was unable to find new counsel to take her case. (*See* ECF No. 20).

[2] Plaintiff has failed to comply with Local Civil Rule of Court 56. Plaintiff did not file a memorandum of law in opposition to Defendants' motion for summary judgment, nor did she file an appendix of documents. (*See* LCvR 56(C)(2)-(3)). Additionally, and as is explained in more

B.   **Statement of Facts**

As an initial matter, the Court notes that Plaintiff's response (ECF No. 34) to Defendants' concise statement of material facts falls far short of meeting the required standard set forth in the Federal Rules of Civil Procedure, the Local Rules for the Western District, and this Court's own rules and procedures. As this Court has previously noted,

> The Federal Rules clearly state that "[a] party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . ." Fed. R. Civ. P. 56(c)(1). This district's Local Rules set a similar standard, indicating that Responsive Concise Statements of Material Facts must address each paragraph of the moving party's Concise Statement of Material Facts by: (a) admitting or denying whether each fact is undisputed and/or material; (b) if applicable, setting forth the basis for the denial of any fact, with appropriate reference to the record; and (c) setting forth in separately numbered paragraphs any other material facts at issue. LCvR 56.C.1.a. Further, any facts set forth in the moving party's Concise Statement of Material Facts, which are claimed to be undisputed, "will be deemed admitted unless specifically denied or otherwise controverted by a separate concise statement of the opposing party." LCvR 56.E.

*Rozier v. United Metal Fabricators, Inc.*, No. 3:09-cv-257, 2012 WL 170197, at *2 (W.D. Pa. Jan. 19, 2012). Local Rule 56.B.1 requires that references to the record must "cite to a particular pleading, deposition, answer to interrogatory, admission on file or other part of the record supporting the party's statement, acceptance, or denial of the material fact." Plaintiff has failed to comply with these rules. Defendants' concise statement of material facts provides detailed averments in separately number paragraphs with specific citations to a

---

detail below, while Plaintiff filed a response to Defendants' concise statement of material facts (ECF No. 34), Plaintiff did not set forth the basis for denying Defendants' statement of facts with appropriate references to the record. (*See* LCvR 56(C)(1)(b)). Indeed, Plaintiff's response is completely devoid of any reference to any evidence in the record and fails to set forth any material facts that are allegedly in dispute in this case. (*See* LCvR 56(C)(1)(c)).

well-developed record. Plaintiff's response, on the other hand, lacks detail, is often non-responsive to Defendants' averments, and does not contain a single citation to the record. Accordingly, "[g]iven Plaintiff's [failure] to comply with the rules, the Court sees no other choice but to follow previous practice, and accordingly deems as admitted all facts" set forth in Defendants' concise statement of material facts. *Rozier*, 2012 WL 170197, at *3.[3]

Accordingly, the following facts are not in dispute. At approximately 9:30 a.m. on March 30, 2010, Dr. Duane Dilling—Decedent's doctor—called the Dispatch and Communications Center at the Pennsylvania State Police Bedford Field Office ("Dispatch Center") to report that Decedent was on his way home following a doctor's visit that morning during which he had expressed a desire to commit suicide. (ECF No. 31-16, ¶ 3). Dr. Dilling also stated that Decedent had previously expressed a desire to kill his wife, Nellie, and that Decedent had at least two guns in his home. (*Id.*).

About 15 minutes after the Dispatch Center received Dr. Dilling's call, Decedent's son-in-law, Colin Clevenger, called the Dispatch Center and stated that Decedent was threatening suicide. (*Id.*). Clevenger explained that Nellie had run from her home to Clevenger's home, which was located next door, and that Decedent had chased her. (*Id.*). Clevenger did not let Decedent into his home. (ECF No. 31-5, at 13:19-25). Decedent went back to his home, retrieved a revolver, returned to Clevenger's home, and pointed the

---

[3] Nevertheless, the Court construes the facts in the light most favorable to Plaintiff because she is the nonmoving party in the pending summary judgment motion. Likewise, the Court is mindful of Plaintiff's *pro se* status. However, Plaintiff has had numerous opportunities to hire new counsel, and the Court has granted multiple extensions of time to allow Plaintiff to file pleadings, motions, and other appropriate filings. Even though Plaintiff is proceeding *pro se*, she must still comply with the applicable rules of procedure in litigating her case.

4

revolver at Clevenger through a window. (*Id.* at 13:8-13). Decedent then went back to his own home.

After receiving these two phone calls, the Dispatch Center sent out an urgent call for all available police units to respond to Decedent's home as soon as possible, cautioning that Decedent was armed and suicidal. (ECF No. 31-16, ¶¶ 6-7). Soon thereafter, the Dispatch Center received a call from Decedent's sister-in-law, Ann Guyton, who said that Decedent had threatened to shoot anyone who came to his door. (*Id.* ¶ 8). Then, PCO Thomas Negrey, a communications officer at the Dispatch Center, contacted Decedent by phone, at which time Decedent stated that he was going to come out shooting and to "get your guns ready." (*Id.* ¶ 9).

Upon arriving at Decedent's home, the police established a perimeter to secure the area. (ECF No. 31-10, at 11:10-14). Corporal Brian Hoover arrived at approximately 11:05 a.m. and was initially in charge of the scene. (*Id.* at 11:3-7). Using a loud speaker, Corporal Hoover directed Decedent to come out of his house and to leave all of his weapons in the house. (ECF No. 31-15 ¶¶ 3-4).

Defendant Johnson arrived at 11:15 a.m. and took over as top commander of the scene ("TOPCOM"). (ECF No. 31-7, at 24:24-25:1). At approximately 11:30 a.m., Decedent came out of his house with both hands in the pockets of his sweatshirt. (ECF No. 31-15 ¶¶ 4-5). Corporal Hoover instructed Decedent to remove his hands from his pockets. (*Id.* ¶ 5). Decedent removed his hands, producing a revolver in his right hand, which he pointed straight up in the air and then put back in his pocket. (*Id.*). Decedent then walked through his yard past Clevenger's home, toward a shed on the other side of the

home, and sat on a blue sofa that was outside in front of the shed. (*Id.* ¶¶ 6-8). Corporal Hoover continued to direct Decedent to put the gun down. (*Id.* ¶ 8).

During the next hour, Decedent continued to move about the yard. (*Id.* ¶¶ 10-18). At times, Decedent kept the gun in the pocket of his pants or in the pocket of his sweatshirt, while at other times, he would take the gun out and hold it in his hands. (ECF No. 31-15 ¶ 17; ECF No. 31-17 ¶ 14). The police continued to ask him to put his weapon down. (ECF No. 31-17 ¶ 12). Decedent made numerous statements to the police, including: "I'm going to shoot at you," "I told [Dr. Dilling] this was going to be my last day on earth," and "I'm going to start shooting at you to get you to start shooting at me," among others. (ECF No. 31-15 ¶¶ 13-14). At one point, the gun discharged while it was in Decedent's pocket, but he assured the police that he was not injured. (*Id.* at ¶ 11).

Lieutenant Cain arrived on the scene at approximately 12:30 p.m. and assumed the position of TOPCOM. (ECF No. 31-7, at 25:1-10). Then, at approximately 1:13 p.m., Decedent took the revolver out of his pocket with his right hand, raised his arm to a firing position, and pointed the revolver at Corporal Hoover and Corporal Flanagan, who were located about 60 feet away. (ECF No. 31-8, at 11:5-12; ECF No. 31-15 ¶ 18; ECF No. 31-17 ¶ 15). Corporal Moyer then fired a single shot, striking Decedent, knocking him to the ground, and killing him. (ECF No. 31-8, at 11:5-12).

**IV.  Legal Standard**

Summary judgment is appropriate only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.

Civ. P. 56(a); *Melrose, Inc. v. Pittsburgh*, 613 F.3d 380, 387 (3d Cir. 2010). Issues of fact are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also McGreevy v. Stroup*, 413 F.3d 359, 363 (3d Cir. 2005). Material facts are those that will affect the outcome of the trial under governing law. *Anderson*, 477 U.S. at 248. The Court's role is "not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 581 (3d Cir. 2009). "In making this determination, 'a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor.'" *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 278 (3d Cir. 2000) (*quoting Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994).

The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets this burden, the party opposing summary judgment "may not rest upon the mere allegations or denials" of the pleading, but "must set forth specific facts showing that there is a genuine issue for trial." *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001) (*quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 n.11 (1986)). "For an issue to be genuine, the nonmovant needs to supply more than a scintilla of evidence in support of its position—there must be sufficient evidence (not mere allegations) for a

7

reasonable jury to find for the nonmovant." *Coolspring Stone Supply v. Am. States Life Ins. Co.*, 10 F.3d 144, 148 (3d Cir. 1993).

**V.      Discussion**

In her complaint, Plaintiff alleges that the police used excessive force in violation of the Constitution when they shot and killed her husband. (ECF No. 1, Compl. ¶¶ 29, 30). Regarding Defendants Bacher and Johnson, Plaintiff alleges that both Defendants are supervisory liable because they were aware of all of the circumstances, they acquiesced to the conduct of the shooter, they ratified his conduct, they were deliberately indifferent to his unconstitutional conduct, and they failed to intervene to prevent the shooting of Decedent, which resulted in his death. (ECF No. 1, Compl. ¶¶ 27, 28).

In their motion for summary judgment, Defendants assert that neither Bacher nor Johnson are personally or supervisory liable, because neither of them actually used force during the incident; neither of them had operational control over the actions of Corporal Moyer at the time of the shooting; and neither of them were responsible for establishing, maintaining, or correcting any policy, practice, or custom for the Pennsylvania State Police. (ECF No. 29, at 11-12).

The Fourth Amendment guarantees the right of citizens "to be secure in their persons . . . against unreasonable searches and seizures." U.S. Const. amend. IV. "Though a citizen is seized by the use of deadly force, such conduct does not constitute a *per se* Fourth Amendment violation . . . [instead] the question is whether the use of deadly force was unreasonable." *Pelzer v. City of Philadelphia*, 656 F. Supp. 2d 517, 527 (E.D. Pa.

2009) (citing *Estate of Smith v. Marasco*, 318 F.3d 497, 515 (3d Cir. 2003)). Thus, "[a]ll claims that law enforcement officials have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 386 (1989).

> The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation. . . . [T]he "reasonableness" inquiry in an excessive force case is an objective one: the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.

*Id*. at 396-97. In determining whether the use of force was reasonable, a court must consider various factors under a totality of the circumstances analysis, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. at 396; *Gunter v. Twp. of Lumberton*, 535 F. App'x 144, 147 (3d Cir. 2013); *Curley v. Klem*, 499 F.3d 199, 207 (3d Cir. 2007). Reasonableness is to be evaluated from the "perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. "[D]efendants can . . . win on summary judgment if the district court concludes, after resolving all factual disputes in favor of the plaintiff, that the officer's use of force was objectively reasonable under the circumstances." *Abraham v. Raso*, 183 F.3d 279, 288 (3d Cir. 1999) (quoting *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994)).

9

### A. John Doe Defendants

As an initial matter, the Court notes that, in her complaint, Plaintiff asserts constitutional violations against two fictitious John Doe Defendants. The complaint alleges that John Doe No. 1 was a sharpshooter with the Pennsylvania State Police who fired the fatal shot that killed Decedent. (ECF No. 1, Compl. ¶ 5). Discovery has revealed that the identity of John Doe No. 1 is Corporal Jesse Moyer. Nevertheless, Plaintiff has failed to amend her complaint to properly name Moyer as a Defendant.

The use of John Doe defendants is permissible "until reasonable discovery permits the true defendants to be identified." *Blakeslee v. Clinton County*, 336 F. App'x 248, 250 (3d Cir. 2009). Federal Rule of Civil Procedure 21 provides that "on motion or on its own, the court may at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21; *see also Parker v. United States*, 197 F. App'x 171, 173 n.1 (2006) (affirming dismissal of John Doe defendants where, "[d]espite ample opportunity to do so, the John Doe defendants were never identified and served with the complaint"). "[I]n the adversarial system of litigation the plaintiff is responsible for determining who is liable for her injury." *Arthur v. Maersk, Inc.*, 434 F.3d 196, 212 (3d Cir. 2006) (citation omitted). Thus, fictitious parties should be dismissed if they are left unidentified at the close of discovery. *Hindes v. F.D.I.C.*, 137 F.3d 148, 155 (3d Cir. 1998); *Atlantic Used Auto Parts v. City of Philadelphia*, 957 F. Supp. 622, 625 (1997). Accordingly, if a plaintiff fails to amend the complaint identifying the unnamed John Doe Defendants, a court may dismiss those defendants prior to ruling on a summary judgment motion. *Blakeslee*, 336 F. App'x at 250.

Here, Plaintiff never amended her complaint to properly identify and serve the John Doe Defendants named in the complaint. A review of the depositions, affidavits, and other exhibits in the record shows that Corporal Jesse Moyer was the officer who fired the shot killing Decedent and is therefore the person identified in the complaint as John Doe No. 1. However, because the complaint was never amended and neither of the John Doe Defendants were properly served, they are dismissed from this case.

Even if Plaintiff had properly amended her complaint to name Corporal Moyer as a Defendant, Plaintiff's claims against him would nevertheless fail under the "objective reasonableness" standard set forth in *Graham*. This Court must weigh the reasonableness of the Corporal Moyer's actions by applying the factors established by *Graham* and its progeny. *See, e.g., Mellot v. Heemer*, 161 F.3d 117, 122-24 (3d Cir. 1998). The relevant facts for this analysis under the circumstances of the instant case are not in dispute. Decedent had threatened to kill himself and others. Multiple people, including Decedent's doctor, his son-in-law, and his sister-in-law, called the police expressing their concerns about Decedent's well-being and the safety of others. Decedent was armed with a loaded weapon, which discharged during the police standoff. (ECF No. 31-15 ¶ 11; ECF No. 31-6, at 14:1-13). The police ordered Decedent—numerous times—to put his weapon down and explained that they were trying to help him and did not want to harm him. Nevertheless, Decedent made numerous threats to the police. Significantly, Decedent raised his arm to a shooting position, which put the officers in fear of their lives.

Corporal Moyer made a split-second decision to shoot Decedent when he saw Decedent—armed with a revolver—raise his arm in a shooting position toward Corporal

11

Hoover and Trooper Flanagan.[4] (ECF No. 31-8, at 11:5-12). Moyer knew Decedent was armed with a loaded firearm and had threatened to harm himself and others. (ECF No. 31-8, at 9:21-10:8). While Plaintiff contends that a non-deadly alternative may have succeeded in neutralizing any threat or danger that Decedent posed, the Third Circuit has instructed, "[w]hile the luxury of hindsight might enable us to think of alternatives . . . , we must heed the Supreme Court's admonition to account for the tense, uncertain, and rapidly evolving circumstances facing officers at the time of their actions." *Mellot*, 161 F.3d 117 at 123 (internal quotations omitted); *see also Neuburger v. Thompson*, 305 F. Supp. 2d 521, 531 (W.D. Pa. 2004) ("(t)he Fourth Amendment does not require officers to use the least intrusive or even less intrusive alternatives in search and seizure cases.") (quoting *Estate of Fortunato v. Handler*, 969 F. Supp. 963, 972 (W.D. Pa. 1996)).

Thus, under the totality of the circumstances surrounding the police standoff, which culminated in the use of deadly force, it is undisputable that a reasonable officer would have been in fear of his life or the lives of others. The officers knew Decedent was armed with a loaded weapon and heard Decedent respond to Corporal Hoover's requests to put his weapon down by saying things such as he wanted someone to shoot him, and "how do you know I'm not pointing the gun at you right now," and "the right thing is for

---

[4] Defendants have submitted into evidence an undisputed and unaltered video recording from a police cruiser that clearly shows Decedent rapidly raising his right arm in a firing position aimed in the direction of the officers in the moment before Corporal Moyer fired his weapon. The Court finds this video, in particular, to be conclusive evidence that Decedent presented a serious risk of death or serious bodily harm to the officers, who then responded in an objectively reasonable manner. *See Scott v. Harris*, 550 U.S. 372, 381 (2007) (explaining that, in ruling on a motion for summary judgment in an excessive use of force case, the court should view the facts in the light depicted by the videotape recorded in a police cruiser).

me to shoot myself." (ECF No. 31-8, at 15:13-22; ECF No. 31-15, ¶ 16). When Decedent initially came out of his house, Corporal Hoover instructed him to take his hands out of his pockets; Decedent took a revolver out of his pocket, held it in the air with his right hand, then returned it to his pocket. (ECF No. 31-15 ¶ 5). The officers saw Decedent repeatedly move his revolver back and forth between his pockets. (ECF No. 31-15 ¶ 8). Decedent's son-in-law, Clevenger, reported prior to the standoff that Decedent attempted to gain access to Clevenger's home, and had aimed his revolver at Clevenger through a window. (ECF No. 31-5, at 14:8-17). To summarize, Decedent was armed with a loaded weapon, he continued to threaten officers, he refused orders to put down his weapon, and he escalated the tense standoff by aiming his gun at officers a short distance away.

Thus, even if Corporal Moyer had been properly named as a Defendant, his actions were nevertheless objectively reasonable, and his shooting of Decedent was justified under the totality of the circumstances. *See, e.g.*, *Neuburger v. Thompson*, 305 F. Supp. 2d 521, 530 (W.D. Pa. 2004) (finding police officer did not violate decedent's Fourth Amendment rights where decedent had recently fired her handgun, and noting, "[victim's] apparent instability and simultaneous possession of a loaded weapon are factors supporting the use of deadly force").

### B. Defendants Bacher and Johnson

Because the Court dismisses the fictitious John Doe Defendants, Defendants Bacher and Johnson are the only two remaining Defendants in this case. Plaintiff has asserted an excessive use of force claim under 42 U.S.C. § 1983 against Defendants Bacher

and Johnson. To state a claim for relief under § 1983, a plaintiff must allege (1) the violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged violation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Plaintiff's amended complaint alleges that Defendant's Bacher and Johnson, acting under color of state law, violated Decedent's Fourth Amendment right to be free from the unlawful use of excessive force. (ECF No. 1, Compl. ¶¶ 1, 9).

To state a claim for excessive use of force under the Fourth Amendment, a plaintiff must show both that a seizure occurred using force, and that the use of force was objectively unreasonable. *Kopec v. Tate*, 361 F.3d 772, 776 (3d Cir. 2004). In assessing whether an action was reasonable, a court should consider the severity of the crime, whether the suspect posed an immediate threat to public safety, and whether the suspect was resisting or evading arrest, among other relevant factors. *Woods v. Grant*, 381 F. App'x 144, 146 (3d Cir. 2010); *Graham*, 490 U.S. at 397.

Additionally, a defendant must have "personal involvement in the alleged wrongs," *Sutton v. Rasheed*, 323 F.3d 236, 249 (3d Cir. 2003), for "liability cannot be predicated solely on the operation of respondeat superior." *Rodriguez v. Town of West New York*, 191 F. App'x 166, 168 (3d Cir. 2006). However, a plaintiff need not prove "direct use of excessive force . . . to impose liability under § 1983." *Garbacik v. Janson*, 111 F. App'x 91, 94 (3d Cir. 2004). Instead, a supervising officer may be liable if he or she "had knowledge of and acquiesced" to the constitutional violation. *Baker v. Monroe Twp.*, 50 F.3d 1186, 1190-91 (3d Cir. 1995). To establish liability, a plaintiff must prove that the supervising

officer had "contemporaneous knowledge of the offending incident" and that his inaction "could be found to have communicated a message of approval." *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 732 (3d Cir. 1989).

Plaintiff has sued Defendants Bacher and Johnson in their individual capacities. (ECF No. 1, Compl. ¶ 11). As an initial matter, the complaint does not allege—and the evidence in the record does not support any allegation—that either Defendant Bacher or Johnson personally used force during the incident. Indeed, the evidence of record conclusively establishes that Corporal Moyer fired the fatal shot. Thus, Plaintiff must demonstrate that Defendants Bacher and Johnson are supervisory liable for the actions of the other officers, namely Corporal Moyer's.

Defendant Bacher did not arrive at the scene until after the shooting took place. (ECF No. 31-6, 8:14-25). Thus, simply put, the evidence shows that Defendant Bacher did not have any contemporaneous knowledge of the offending incident and, furthermore, that he cannot be found to have communicated a message of approval. Because Defendant Bacher was not involved in the incident in any capacity until after the shooting occurred, he cannot be held supervisory liable.

Defendant Johnson, on the other hand, was on the scene; but while he held a higher rank than Corporal Moyer, he was not the TOPCOM in charge of the scene at the time the shot was fired. Instead, Lieutenant Cain was the TOPCOM. (ECF No. 31-7, 25:2-14; ECF No. 31-8, 16:23-17:2). Nevertheless, even if Defendant Johnson held a supervisory position over Corporal Moyer at the time of the shooting, there is simply no evidence to

15

support Plaintiff's allegations that Defendant Johnson is supervisory liable for Corporal Moyer's actions under the applicable legal standards set forth above.

As previously noted, it is well established that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (1988) (citing *Parratt v. Taylor*, 451 U.S. 527, 537 n.3 (1981)). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity." *Id.* Plaintiff has alleged that Defendants Bacher and Johnson "had authority over Defendant John Doe No. 1, were aware of the actions of said Defendant . . . acquiesced in said actions, ratified said actions, and/or were deliberately indifferent to the unconstitutional conduct of said Defendant, and failed to intervene to prevent the occurrence of the unconstitutional action described above." (ECF No. 1, Compl. ¶ 27). Nevertheless, these vague allegations are simply unsupported—indeed, they are controverted—by the evidence in the record before the Court.

There is simply no evidence that Defendant Bacher or Johnson knew Corporal Moyer would shoot Decedent, nor is there any evidence that either of them directed him to do so. As Defendant Johnson explained in his deposition, "[t]here was no direct order for anyone to utilize deadly force. Our training is such that if someone—if you as a police officer is in fear of your life or fearing lives of others, that you may utilize lethal force." (ECF No. 31-7, 18:16-22). As explained in detail above, the shooting of Decedent followed

16

a tense standoff with police during which Decedent raised his revolver in a shooting position, aimed at police, after making numerous threats that he would start shooting.

Plaintiff's complaint also alleges that Defendants Bacher and Johnson failed to intervene to prevent Corporal Moyer from firing the fatal shot. (ECF No. 1, Compl. ¶ 28). If an officer fails to intervene and there was a "realistic and reasonable opportunity to intervene," then he may be liable for another officer's constitutional violations. *Smith v. Mensinger*, 293 F.3d 641, 651 (3d Cir. 2001); *Garbacik*, 111 F. App'x at 94. To determine whether there was a reasonable opportunity to intervene, a court must consider factors such as the "temporal length of the alleged assault, the proximity of the non-intervening officer to the alleged assault, the ability of the non-intervening officer to perceive and/or hear the alleged assault," among others. *Armbruster v. Marguccio*, No. 3:05-cv-344, 2006 WL 3488969, at *8 (W.D. Pa. Dec. 4, 2006).

Here, there is simply no evidence that either Defendant Bacher or Johnson had a reasonable opportunity to intervene to prevent the shooting of Decedent. Most telling is the fact that Corporal Moyer himself admits, "It was my decision," conceding that that no one specifically authorized his split-second decision to shoot. (ECF No. 31-8 at 11:3-12). As he explained in his deposition, "When [Decedent] raised the gun and pointed it at Corporal Hoover and Trooper Flanagan, I perceived that as a threat of their life, and I thought that he was going to shoot them. So in turn, I took the action and stopped his action . . ." (*Id.* at 11:5-10).

Thus, the evidence conclusively demonstrates that Corporal Moyer—upon seeing Decedent raise his revolver to a firing position, aimed at police officers—made a split-

second decision based on his training and in light of the circumstances unfolding during a tense standoff between the police and an armed man who had threatened his own life, the lives of his family, and the officers responding to the scene. Because Corporal Moyer's actions were objectively reasonable, there is no basis on which to hold Defendants Bacher and Johnson supervisory liable. Nevertheless, even if Corporal Moyer's actions were not reasonable in light of the circumstances, there is no evidence that either Defendant Bacher or Johnson had an opportunity to intervene but failed to do so.

In sum, Decedent presented a serious threat and imminent danger to the safety and lives of himself, his family, and the officers on scene, thus warranting the actions taken by the police to neutralize that threat. Indeed, it was objectively reasonable for the officers to believe, in light of the totality of the circumstances, that deadly force was necessary and that Chester Guyton posed a significant threat of death or serious physical injury to the officers and others. *Abraham v. Raso*, 183 F.3d 279, 289 (3d Cir. 1999). Plaintiff has simply not provided any evidence from which a reasonable jury could return a verdict in her favor.

## VI. Conclusion

The material facts in this case are not in dispute. Based on the undisputed facts in the record, the police did not use excessive force in this case; therefore, Plaintiff cannot prevail on her wrongful death or survival claims under § 1983. *See Gunter v. Twp. of Lumberton*, 535 F. App'x 144, 149 (3d Cir. 2013). Thus, viewing the evidence in the light

most favorable to Plaintiff, judgment as a matter of law in favor of Defendants is proper.

Accordingly, the Court will **GRANT** Defendants' motion for summary judgment.

    An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NELLIE M. GUYTON, *Administratrix* | ) | |
| *of the Estate of* CHESTER L. GUYTON, | ) | |
| *Deceased,* | ) | CIVIL ACTION NO. 3:12-27 |
| | ) | |
| Plaintiff, | ) | JUDGE KIM R. GIBSON |
| | ) | |
| v. | ) | |
| | ) | |
| LT. GREGORY M. BACHER, SGT. | ) | |
| ROBERT JOHNSON, JOHN DOE NO. 1, | ) | |
| and JOHN DOE NO. 2, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

AND NOW, this 12th day of August 2014, having considered the pending summary judgment motion in this case, along with the parties' briefs, supporting exhibits, and other relevant filings, and in accordance with the foregoing memorandum,

**IT IS HEREBY ORDERED** that the motion for summary judgment (ECF No. 28) filed by Defendants Lt. Gregory M. Bacher and Sgt. Robert Johnson is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall mark this case closed.

BY THE COURT:

/s/ Kim R. Gibson

KIM R. GIBSON
UNITED STATES DISTRICT JUDGE